Florence BROWN, individually and as Executrix of the Estate of J.D. Brown, Plaintiff,

v.

COMMONWEALTH LIFE INSURANCE COMPANY, et al., Defendants.

No. CIV.A. 98–A–186–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 23, 1998.

Jimmy L. DeBardelaben, Terry P. Wilson, Montgomery, AL, for Plaintiff.

Davis Carr, Frank L. Parker, Jr., Mobile, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I.  INTRODUCTION

This cause is before the court on a Motion for Summary Judgment (Doc. # 24) filed by the Defendant Commonwealth Life Insur-

ance Company ("Commonwealth") on September 2, 1998.

The Plaintiff originally filed her Complaint in the Circuit Court of Butler County, Alabama, on January 20, 1998, bringing claims for fraud, suppression, deceit, conversion, breach of contract, and negligence or wantonness against Commonwealth and unnamed fictitious defendants. On April 27, 1998, the Plaintiff amended her Complaint to state a claim for bad faith, but added no additional defendants.

On May 14, 1998, this court entered a Memorandum Opinion and Order dismissing the claims brought by Florence Brown, in her capacity as executrix of the estate of J.D. Brown, for fraud, suppression, deceit, conversion, and negligence or wantonness. Commonwealth has now moved for summary judgment on the remaining claims.

For reasons to be discussed, the Motion is due to be GRANTED.

## II. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

The Plaintiff was married to J.D. Brown. In 1934, J.D. Brown bought a life insurance policy from Commonwealth. The Plaintiff contends that under the terms of the policy, J.D. Brown's life insurance policy would be paid up after twenty-five years, and that after the twenty-five years, the policy could be extended for fourteen years to give the policy an endowed cash value of $1,036.00. According to the Plaintiff, after paying premiums for twenty-five years, J.D. Brown elected to pay policy premiums another fourteen years. The Plaintiff further states that after J.D. Brown paid premiums for fourteen years, Commonwealth continued to bill for and receive premium payments up until August 1996. According to the Plaintiff, upon the death of J.D. Brown, Commonwealth refused to honor the endowed cash value of $1,036, and did not pay the Plaintiff as the beneficiary under the policy.

Commonwealth interprets the policy at issue differently, contending that the policy would not be paid up after twenty-five years unless, within one year of issuance of the policy, the insured elected in writing to make use of a special provision whereby the policy would be paid up, and the insured canceled by endorsement the dividend coupons provided to him. Commonwealth also contends that it did not pay the Plaintiff under the policy because the Plaintiff failed to send Commonwealth a claim form or a certificate of death for J.D. Brown.

## III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## IV. *DISCUSSION*

### A. Fraud, Suppression, Deceit

The Plaintiff alleged in her Complaint and Amendment to the Complaint, and argued to this court relative to Commonwealth's Motion to Dismiss, that representations had been made by Commonwealth both to her husband and to her directly. The Plaintiff has, however, failed to present any evidence of representations made to her. In fact, the Plaintiff has failed to respond in any way to the Motion for Summary Judgment regarding the claim based on fraudulent representation. The Defendant, on the other hand, has pointed to testimony in the Plaintiff's deposition in which she states that she never had any conversations with Commonwealth, or with any representative of Commonwealth, until after her husband's death. Florence Brown's Deposition, page 22. Given that the only evidence before the court is that no representation was made directly to the Plaintiff, the court concludes that Commonwealth is entitled to summary judgment on the fraudulent misrepresentation claim.

■ Because there are no representations upon which to base a fraud claim, the Plaintiff's remaining fraud claims are for suppression and deceit based on that suppression. Suppression of a material fact that a party is under an obligation to communicate constitutes fraud. Ala.Code § 6–5–102 (1993). The elements of a cause of action for fraudulent suppression are (1) a duty on the part of the defendant to disclose facts, (2) concealment or nondisclosure of material facts, (3) inducement of the plaintiff to act, (4) action by the plaintiff to his or her injury. *Lambert v. Mail Handlers Benefit Plan,* 682 So.2d 61 (Ala.1996). Deceit results from either a willful or a reckless misrepresentation or a suppression of material facts with an intent to mislead. *Hughes v. Hertz Corp.,* 670 So.2d 882, 888 (Ala.1995).

The Plaintiff's argument is that Commonwealth owed her a duty to disclose that it never intended to honor the cash endowment provision of the policy at issue, that the quarterly payments paid from 1959 to 1996 were not being applied toward the cash endowment, that the original policy was paid in full as of 1959, and that the Special Provision requirements providing for a cash endowment had been fulfilled.

■ Commonwealth argues in response that the suppression and deceit claims are barred by the statute of limitations. The statute of limitations for a fraud claim is two years. Ala.Code § 6–2–38(1) (1993). The statute begins to run when the plaintiff discovers, or should have discovered, the fraud. *Kelly v. Connecticut Mutual Life Ins. Co.,* 628 So.2d 454 (Ala.1993).

■ The court notes that in asserting the statute of limitations defense in this case, Commonwealth has argued that, even accepting the Plaintiff's interpretation of the policy, her claims are barred by the statute of limitations. Keeping in mind that this argument assumes the correctness of the Plaintiff's policy interpretation, the court will address the statute of limitations defense.

Commonwealth points to a letter sent to the Plaintiff's husband on November 6, 1935, and states that this letter was the first indication that the Plaintiff's husband had not applied for the Special Provision of the policy. Defendant's Exhibit E. In this letter, Commonwealth informs J.D. Brown that to take advantage of the Special Provision he must cancel his dividend coupons. *Id.* The letter also states that Commonwealth sent J.D. Brown a request to fill out so that the Special Provision would be applied. *Id.* It is apparently undisputed that J.D. Brown did not take advantage of this opportunity to request the Special Provision. Commonwealth argues that because the Plaintiff tes-

tified that she discussed each piece of correspondence between her husband and the Defendant, this letter let the Plaintiff know that Commonwealth did not consider the Special Provision to apply to the Plaintiff's husband's policy, and alerted her to the fact that the policy was not paid up, since the coupons had not been canceled.

Commonwealth also points out that letters sent in 1960 gave the Plaintiff notice that the Special Provision was not applicable to J.D. Brown's policy. Commonwealth offers a letter written to Commonwealth by J.D. Brown informing them of his decision to enact the endowment provision by paying premiums for another fourteen years. Defendant's Exhibit J. Commonwealth sent a letter in response, informing the Plaintiff's husband that he had failed to enact the provision and that it was too late to do so. Defendant's Exhibit L. Commonwealth has also pointed to a draft of a letter written by Plaintiff's husband, which was never sent to the Defendant, in which the Plaintiff's husband states that he knew that to enact the provision he needed to notify Commonwealth by February 6, 1960 that he wanted to continue the provision as an endowment. Defendant's Exhibit 8 to Plaintiff's Deposition. The Plaintiff's husband later wrote a letter to Commonwealth in which he acknowledged that the Special Provision was not enacted and asking for a refund of premiums paid. Defendant's Exhibit M. Commonwealth also argues that the Plaintiff had notice that the Special Provision had not been enacted because her husband continued to receive dividends, even though the policy specifically states that to enact the Special Provision dividend coupons must be canceled.

The Plaintiff has not responded to the argument that the suppression and deceit claims are barred by the statute of limitations. The court finds that, even under the Plaintiff's theory, correspondence between the Plaintiff and Commonwealth allowed the Plaintiff to discover the alleged fraud in this case at a point earlier than two years before the filing of this suit. The 1935 letter clearly indicated that the Plaintiff's interpretation of the policy as being paid up after twenty-five years without satisfaction of any other condi-

tion was not the interpretation of the policy made by Commonwealth. The March 1960 letter, in which Commonwealth informed J.D. Brown that he could not elect the endowment option because the Special Provision required the coupons to be canceled within one year of the issuance of the policy, also alerted the Plaintiff that the Endowment provision was not applicable to J.D. Brown's policy. Although the Plaintiff points out that this letter does not state that the policy was not paid up, the letter does state that the Special Provision requirements had not been satisfied, and states that J.D. Brown could not elect the endowment feature of his policy. Defendant's Exhibit L. The Plaintiff stated in her deposition that she was aware of the contents of this letter. Florence Brown Deposition, page 37. The court finds, therefore, that even under the Plaintiff's interpretation of the policy, she knew of, or should have discovered, the facts that she now contends constitute fraud as early as 1935, or at least by 1960.

▇▇▇ As previously stated, the discussion of the statute of limitations defense has been based on Commonwealth's assuming for purposes of this motion that the Plaintiff's interpretation of the policy is correct. The court does not find, however, that the Plaintiff has correctly interpreted the insurance policy at issue.

The policy states, in relevant part, that Commonwealth Life Insurance Company will pay the sum of one thousand dollars upon receipt of proof of death of J.D. Brown. The policy then goes on to state

> This policy is issued on the Annual Dividend Plan, and the dividends are guaranteed to be the amounts shown on the coupons hereto attached. They may be used in reduction of the premium then due, or to mature the Policy in accordance with the special provision contained herein.

### SPECIAL PROVISION

The Company guarantees that this Policy will become fully paid up after payment of 25 full annual premiums, and that the cash surrender value at the end of that number of years shall be $466.00, providing the

Insured within one year from date hereof shall elect in writing to pay the premiums in full and have all Coupons canceled by endorsement, and if the Insured elects to continue to pay premiums in full for 14 years thereafter, the Company guarantees that this Policy shall mature as an endowment and that the cash surrender value at the end of the total number of years shall be $1036.00.

\* \* \* \* \* \*

This Contract is made in consideration of the application for this Policy, hereby made a part hereof, and the payment of the first premium of FIVE and 65/100 Dollars, and the payment of a like amount at the Home Office of the Company on or before the 6th day of FEBRUARY, MAY, AUGUST & NOVEMBER of each year during the continuance of the policy.

Defendant's Exhibit B.

The Plaintiff's reading of the language in this policy is that the policy would be paid up after twenty-five years, and that by merely paying fourteen more years of premiums after the twenty-five years, the policy would be converted to an endowment. Under the Plaintiff's reading, therefore, the policy would become an endowment as long as the Plaintiff paid premiums for thirty-nine years. The Plaintiff states that an election only had to be made in writing to recover the surrender value at the end of the twenty-five years.

The court finds that this interpretation is inconsistent with the plain language of the policy. First, the sentence stating that the policy is paid up after twenty-five years is located within the paragraph labeled "Special Provision," which includes the written notice requirement. Second, the body of the policy states that premium payments are to be made for the life of the policy. Third, although the Plaintiff contends that the written notice requirement only applies to the cash surrender value, the stated cash surrender value and the statement that the policy will be paid up are connected with an "and," making the written notice requirement a condition for the policy being paid up and having a cash surrender value of $466.00.

Precedent from the Supreme Court of Alabama establishes that when a company discloses material facts in the written materials provided to the insured, there is no suppression of fact. In *Lambert v. Mail Handlers Benefit Plan,* 682 So.2d 61 (Ala.1996), the Alabama Supreme held that because the defendant provided the plaintiff with a brochure which stated the terms of the plan, including the material which formed the basis of the suppression claim, there was no violation of a duty to disclose. *Lambert,* 682 So.2d at 63. "A defendant does not suppress the truth, even if he previously made an oral misrepresentation, if he presents for the plaintiff's review and signature a document that clearly discloses the truth." *Walker v. Transouth Financial Corp.,* No. 95–A–672–N, 1996 WL 406836 at *3 (M.D.Ala. July 10, 1996)(citing *Roper v. Assoc. Fin. Serv. of Alabama, Inc.,* 533 So.2d 206, 209 (Ala.1988)).

In this case, the Plaintiff has argued that Commonwealth should have disclosed that it never intended to honor the cash endowment. The policy at issue states that it will be paid up if the insured gives written notice within one year of the issuance of the policy and endorses the dividend coupons. The endowment provision can then be elected after the Special Provision has been met. The Defendant, therefore, disclosed how the policy could be converted into an endowment. In addition, Commonwealth told J.D. Brown in a letter that the endowment provision could not be enacted in 1960 because the conditions of the Special Provision had not been met. Commonwealth did not, therefore, suppress that it would not pay on the policy as a cash endowment.

The Plaintiff also contends that Commonwealth should have disclosed that the quarterly payments were not being applied toward the cash endowment. The Plaintiff states that on March 30, 1960, J.D. Brown asked for four quarterly payments to be returned, but that they were not returned. A claim based on failure to refund in 1960 would clearly be outside of the statute of limitations. In addition, Commonwealth had already told J.D. Brown that he had not timely applied for the endowment provision and the policy states, in a section outside of

the Special Provision section, that premiums are due on a quarterly basis during the continuation of the policy. There is no evidence that J.D. Brown requested termination of the policy; in fact, in the same March 30, 1960 letter, J.D. Brown requested the that Defendant give him a loan against the policy. Accordingly, the information that policy premiums were not being applied toward the endowment was not suppressed.

The Plaintiff also claims that Commonwealth should have disclosed that the policy had been paid in full and that the Special Provision had been fulfilled. The information which the Plaintiff contends should have been disclosed is, however, inconsistent with the policy language. The policy had not been paid up and the Special Provision had not been satisfied because J.D. Brown did not elect in writing within one year to make use of the policy nor had he canceled his dividend coupons by endorsement.

Because the documents which have been presented to this court should have alerted the Plaintiff to the facts which she claims constituted fraud at least by 1960, if not before, the Plaintiff's claims are untimely. *See Foremost Insurance Company v. Parham*, 693 So.2d 409 (Ala.1997)(holding that plaintiffs should have discovered when they received their insurance policies that they had not been told about adjacent structures coverage). In addition, even if the statute of limitations were not a bar to the Plaintiff's claim, the court finds that the Plaintiff's reading of the insurance policy is inconsistent with the language of the policy, so there are no material facts which have been suppressed from the Plaintiff.

### B. Conversion

■ To support a conversion claim, the Plaintiff must show that there was a wrongful taking, an illegal assumption of ownership, or an illegal use or misuse of another's property. *Gray v. Liberty National Life Insurance Company*, 623 So.2d 1156 (Ala. 1993). The Plaintiff contends that because Commonwealth knew that it never intended to honor the policy's cash endowment provision, but continued to bill for premium payments, Commonwealth engaged in a wrongful detention. The Plaintiff also states that the bills sent each month were a solicitation of premiums which constituted a wrongful taking.

As was previously discussed, the bills which were sent, and the premiums which were accepted, were contemplated by the insurance policy in question. Because the policy requires payment of premiums on a quarterly basis, and is paid up after twenty-five years only if written notice is given and the coupons are endorsed, the Defendant's actions constituted neither a wrongful taking nor a wrongful detention.

### C. Breach of Contract/Negligence and Wantonness

The Plaintiff has also brought claims for breach of contract based on the failure to honor the endowment provision, and for negligence and wantonness based on the Defendant's billing for and acceptance of insurance premiums from February 1973 until the death of J.D. Brown in 1996. The Plaintiff's arguments are based on her reading of the policy that the policy would be paid up after twenty-five years.

As the court has previously discussed, the face of the policy states that certain conditions must be met in order for the Special Provision to apply and that, absent the application of this provision, policy premiums had to be paid on a quarterly basis. Since the insured did not give timely written notice of his intent to make use of the Special Provision, nor did he endorse his dividend coupons, the Special Provision, including the endowment provision, did not apply to J.D. Brown's policy. Under the policy, therefore, Commonwealth properly collected premium payments and did not treat the policy as an endowment, so that summary judgment is due to be granted on these claims.

### D. Bad Faith

■ Aside from the issue of failure to pay on the policy as an endowment, it appears that the Plaintiff intends to pursue a claim for bad faith based on a failure to pay on J.D. Brown's policy. Commonwealth has moved for summary judgment on the claim of bad faith refusal to pay, arguing that the Plaintiff has not provided evidence that there was no lawful basis for a refusal to pay, or evidence

of Commonwealth's actual knowledge of that fact. *See Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So.2d 866 (Ala.1996). Under Alabama law, the obligation to pay "does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *United Ins. Co. of America v. Cope*, 630 So.2d 407, 411 (Ala.1993).

■ Commonwealth states that it had a lawful basis for a refusal to pay the Plaintiff's claim because the Plaintiff failed to comply with one of the requirements of the policy by failing to send Commonwealth a copy of J.D. Brown's death certificate.[1] In support of this argument, Commonwealth cites to the Affidavit of Frances Miesner, Compliance Analyst for Commonwealth Life Insurance Company, in which Miesner states that Commonwealth never received a death certificate and claim form for the policy proceeds from the Plaintiff. Affidavit of Frances Miesner, ¶ 4. Commonwealth also points out that the policy states that it is payable upon "due proofs of the death of J.D. Brown." Defendant's Exhibit B.

In response, the Plaintiff points out that she stated in her deposition that she is "really not sure" if she sent the death certificate, but she feels "quite confident we did." Deposition of Florence Brown, page 24. The Plaintiff argues that the court should disbelieve Commonwealth's evidence and that her testimony has created a question of fact as to whether there was a lawful basis for denial of the claim based on Commonwealth's stating that it did not receive the death certificate.

■ Under the common law, a plaintiff can create a rebuttable presumption that an item was received by an addressee by providing evidence that it was properly sent. *Currie v. Great Central Ins. Co.*, 374 So.2d 1330 (Ala.1979); *see also Konst v. Florida East Coast Railway Co.*, 71 F.3d 850 (11th Cir. 1996). A defendant can then rebut the presumption by providing evidence that the item

was not received. This evidence does not conclusively rebut the presumption, but creates a question of fact. *Billingsley v. State*, 367 So.2d 553 (Ala.Crim.App.1978)(applying rule to mailing of demand for speedy trial).

The first step in the analysis is to determine whether the plaintiff has presented evidence sufficient to create the presumption. The only evidence provided to this court as to the Plaintiff's alleged sending of the death certificate is the Plaintiff's statement, when asked if she sent the death certificate, that "I'm really not sure, but I feel quite confident we did." This statement is equivocal at best, and does not establish that the death certificate was sent. Evidence sufficient to raise the presumption includes "not only writing the letter and addressing it, but that it was stamped and placed in the United States mail." *Tharp v. Loeb Hardware Co.*, 24 Ala.App. 344, 135 So. 412, 413 (Ala.App. 1931); *Konst*, 71 F.3d at 851 (stating that presumption of receipt requires proof that item was properly addressed, had sufficient postage, and was deposited in the mail). In addition, the reference to "we" in the Plaintiff's statement does not even allow for the conclusion to be drawn that the Plaintiff contends that she herself mailed the death certificate. *See Carpenter v. Providence Washington Ins. Co.*, 45 U.S. 185, 4 How. 185, 11 L.Ed. 931 (1846)(holding that statement that "My impression is, that I put it in the post-office myself, but I cannot say positively" fails to prove even that a letter was deposited in the post-office); *cf. Tharp*, 135 So. at 413 (stating that evidence that the sender supposes the letter reached the mail is not evidence that it reached the mail).

Because the Plaintiff's equivocal statement does not establish that she mailed the death certificate to the Defendant, the court concludes that there is no evidence from which a reasonable jury could conclude that Commonwealth did not have a lawful basis for refusal to pay on the Plaintiff's claim. Com-

---

1. The Motion to Dismiss which was previously ruled on by this court did not address a bad faith claim brought on behalf of the estate of J.D. Brown. It is not clear that the Plaintiff intends to assert this claim now. To the extent that such a claim is being pursued, however, the court

finds that summary judgment is due to be granted. *See Georgia Casualty and Surety Co. v. White*, 582 So.2d 487 (Ala.1991)(bad faith claim brought by estate where actions of insurance company occurred during life of insured).

monwealth is, therefore, entitled to summary judgment on the bad faith claim.

## V. *CONCLUSION*

For the reasons discussed above, the court concludes that the Plaintiff has failed to create a question of material fact and that Commonwealth is entitled to judgment as a matter of law. A separate Order will be entered in accordance with this Memorandum Opinion.